**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GREEKTOWN CASINO, LLC,
et al.,

              CASE NO. 07-CV-13583

    Plaintiffs,

              PAUL D. BORMAN

-vs-              UNITED STATES DISTRICT JUDGE

ZURICH AMERICAN
INSURANCE COMPANY, A New
York domiciled property and
casualty insurer, et al.,

    Defendants.
_____/

**OPINION AND ORDER**
**(1) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT;**
**(2) DENYING DEFENDANT AMERICAN HOME ASSURANCE COMPANY'S MOTION**
**FOR SANCTIONS; AND (3) DENYING PLAINTIFFS' MOTIONS FOR PARTIAL**
**SUMMARY JUDGMENT**

Before the Court are five motions: (1) Defendant American Home Assurance Company's ("American Home") October 22, 2007 Motion for Summary Judgment in Lieu of an Answer (Doc. No. 8); (2) Defendant Zurich American Insurance Company's ("Zurich") November 6, 2007 Motion for Summary Judgment (Doc. No. 12); (3) American Home's November 8, 2007 Motion for Sanctions (Doc. No. 14); (4) Plaintiffs Greektown Casino, LLC ("Greektown"), Kewadin Casinos Gaming Authority ("KCGA"), and Kewadin Greektown Casino, LLC's ("Kewadin") December 6, 2007 Motions for Partial Summary Judgment (Doc. Nos. 17 & 18). The Court held a motion hearing on February 21, 2008. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendants' motions for summary judgment, DENIES Defendant American Home's motion for sanctions, and DENIES Plaintiffs' motions for partial summary judgment.

1

## I. BACKGROUND

This diversity case arises from Plaintiffs' allegations that Defendant insurance companies refused to defend and to indemnify, under relevant insurance policies, in an underlying state court civil action.

Greektown is a Michigan limited liability company with its principal place of business in Michigan. (Compl. ¶ 1). KCGA was created by the Sault Sainte Marie Tribe of Chippewa Indians ("Sault Tribe"), and is organized under Chapter 94 of the Tribal Code. (Compl. ¶ 2). Kewadin is a Michigan limited liability company with its principal place of business in Michigan. (Compl. ¶ 3). Zurich and American Home are New York corporations. (Compl. ¶¶ 4-5).

KCGA is 100% owner of Kewadin. (Pl. Br. Ex. C, Matson Aff. ¶ 7). Kewadin owns a majority share of Greektown. (*Id*. ¶ 8).

In March 2001, the majority of the members of the management board of Greektown changed its agent of record for its UNUM life insurance, Medical life insurance, and Delta dental plan insurance to Dennis Lane & Associates ("Lane") – effective April 1, 2001. (Def. AHA Br. Ex. D, Resolution). On May 22, 2001, in return for a loan made by Lane, the Sault Tribe agreed to retain Lane as its insurance agent of record for ten years from that date. (Def. AHA Br. Ex. E, 5/22/01 Letter).

On November 3, 2006, Lane filed a lawsuit in Wayne County Circuit Court against Kewadin and Greektown. (Compl. Ex. A, Complaint); *Lane v. Kewadin Greektown Casino LLC*, No. 06-631133 (Wayne County Cir. Ct. filed Nov. 3, 2006). The case was assigned to Judge Daphne Means Curtis.

Lane alleges that agents or employees of Kewadin interfered with this relationship and improperly terminated the contract. Lane's complaint stated two counts: (1) tortious interference with a contract (Kewadin); and (2) breach of contract (Greektown). The relevant allegations in the state court complaint include:

15. Lane, and Lane & Associates had a valid business relationship with Greektown.

16. Defendant Kewadin was aware of this relationship and were aware that Plaintiffs were designated by Greektown as its Agent of Record.

17. Kewadin, through its employees/agents intentionally and improperly interfered with the contracts and business relationships and expectancies between Greektown and Lane and Lane & Associates, causing Greektown to breach its agreement with Plaintiffs.

19. The comments, statements and representations made by Kewadin employees/agents were made for the specific purpose of wrongfully interfering with and inducing the disruption of existing business relationships, causing Greektown to terminate its business relationship with Lane and Lane & Associates.

20. As a direct and proximate result of Kewadin's wrongful conduct, Lane and Lane & Associates have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the business community, and loss of business opportunities.

. . . .

23. At all relevant times, Plaintiffs had a valid contract with Greektown to act as Greektown's Agent of Record for a period of ten (10) years.

24. Plaintiff performed under the contract with Greektown.

25. Defendant Greektown breached the contract it had with Plaintiffs when it terminated Plaintiff as its Agent of Record.

Plaintiffs retained the law firm of Honigman, Miller, Schwartz and Cohn LLP to represent them in the state case.

On November 13, 2006, Plaintiffs tendered their defense in the state court action to American Home. (Compl. Ex. B, Fax Cover Sheet).

On January 2, 2007, and March 28, 2007, the parties in the state case stipulated to stay the proceedings. (Def. AHA Br. Ex. I, State Court Docket Sheet).

On January 11, 2007, AIG Domestic Claims, Inc., retained by American Home, wrote a letter to Greektown informing it that it was disclaiming coverage for the state civil action:

> We must advise that for the following reasons, American Home must disclaim coverage for this matter.
> . . . .
> However, Exclusion 4(h) precludes coverage for this matter.
> . . . .
> Plaintiff's lawsuit arises from a purported breach of the Contract between Plaintiff and Greektown. Any Loss stemming from a breach of express contract or agreement is precluded from coverage pursuant to Exclusion 4(h).
> . . . .
> Furthermore, Exclusion 4(q)(2) precludes coverage for this matter.
> . . . .
> Coverage B(I) pertains to a Claim first made against the Company. Plaintiff asserts tortious interference in contractual relations and business relationship against both Kewadin and Greektown. As such, coverage is precluded for this matter, pursuant to Exclusion 4(q)(2), as well as the aforementioned Exclusion 4(h).
>
> In light of the foregoing, we must regretfully inform you that no coverage can be afforded for this matter under the above referenced policy.

(Compl. Ex. C).

On May 25, 2007, Plaintiffs provided a Notice of Claim to Zurich. (Compl. Ex. D, Notice of Claim).

On June 5, 2007, Zurich responded, disclaiming coverage for the state civil suit:

> Based on the facts made available to us, the allegations in the Complaint along with the policy language, we have determined that questions exist as to the applicability of coverage for this matter under the policy.
> . . . .
> The allegations in this Complaint do not fall under the policy defined terms of "bodily injury" or "property damage" nor is there an "occurrence." Therefore, there is no applicable coverage for this matter under Coverage A of the policy.
> . . . .

4

> The allegations in this Complaint do not fall under the policy defined term of "personal and advertising injury" nor arise out of "advertisement." Therefore, there is no applicable coverage for this matter under Coverage B.
>
> This Complaint was forwarded to you back in November 2006. Complaint is filed, but not served. We were not notified of this loss until May 31, 2007. You have also retained the services of Mr. George Scott Romney and Mr. Sean Crotty of Honigman, Miller, Schwartz & Cohn, LLP to represent Kewadin Casinos and Greektown in this matter without our consent or consultation
> . . . .
> Even if coverage were afforded under this policy, you have failed to notify us timely which prejudiced our ability to defend you in this matter.
>
> Any fees/expenses now due and owing or will be due and owing to Honigman, Miller, Schwartz and Cohn, LLP will not be considered for payment as assignment was complete without our consent.
>
> Due to the above, we must *respectfully disclaim coverage for this matter*.

(Compl. Ex. E) (emphasis in original).

On June 8, 2007, Plaintiffs' counsel sent a letter to AIG Domestic Claims, challenging its coverage decision under the American Home policy. (Def. AHA Br. Ex. K, 6/8/07 Letter). On June 20, 2007, AIG responded to Plaintiffs' counsel, reaffirming its previous decision to deny coverage. (Def. AHA Br. Ex. L, 6/20/07 Letter).

On August 14, 2007, Zurich sent Plaintiffs a supplemental letter regarding its denial of coverage. (Def. Zurich Ex. 4, 8/14/07 Letter). Zurich informed Plaintiffs that coverage was unavailable for three reasons: (1) the complaint did not allege "bodily injury" or "property damage" caused by an "occurrence" under the policy; (2) the state complaint does not alleged "personal and advertising injury" covered under the policy; and (3) Plaintiffs failed to notify Zurich in a timely manner under the policy. Zurich also informed Plaintiffs that it did not cover punitive damages.

On August 27, 2007, Plaintiffs filed a suit for declaratory judgment in this Court, alleging that Defendants failed to defend and to indemnify under the relevant insurance policies. Plaintiffs

allege the following Counts:

      Count I:       Declaratory Judgment
      Count II:      Breach of Contract
      Count III:     Bad Faith

Defendants moved for summary judgment. Plaintiffs filed motions for partial summary judgment against Defendants. American Home also filed a motion for sanctions against Plaintiffs.

## II.   ANALYSIS

### A.   Summary Judgment Standard

The United States Court of Appeals for the Sixth Circuit has summarized the relevant legal standard for summary judgment motions:

> Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences in the light most favorable to the nonmoving party. "To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact." A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500-01 (6th Cir. 2007) (internal citations omitted).

### B.   American Home Assurance Policy

The American Home policy at issue is entitled "Directors, Officers and Private Company Liability Insurance Policy – Including Employment Practices and Securities Liability." The policy provided two types of coverage: (1) Coverage A for individual directors, officers, and employees; and (2) Coverage B for private company insurance. The American Home insurance policy at issue

lists the following insureds: (1) Greektown Casino LLC; and (2) Kewadin Casinos Gaming Authority.

The following portions of the American Home Policy are relevant:

1.     INSURING AGREEMENTS
. . . .
Coverage B: Private Company Insurance

This policy shall pay Loss of the Company arising from a:

    (I)    Claim first made against the Company, or
    (ii)    Claim first made against an Individual Insured,

During the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act[.] . . . The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.
. . . .
Defense Provisions

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

2.     DEFINITIONS
. . . .
    (c)    "Company" means (I) the Named Entity; (ii) any Subsidiary thereof.
. . . .
    (t)    "Wrongful Act" means:
. . . .
        (2)    with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company[.]
. . . .
4.     EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured

>    . . . .
>
>    (h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement[.]
>
>    . . . .
>
>    (q) with respect to Coverage B(I) only:
>
>    . . . .
>
>    (2) for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationship.

American Home contends that Exclusions h and q(2) of the policy disclaim coverage for Lane's tortious interference claim (Kewadin) and breach of contract claim (Greektown).

The Michigan Court of Appeals has summarized the relevant analysis for interpreting the extent of coverage under an insurance policy:

> It is well settled that "if the allegations of the underlying suit arguably fall within the coverage of the policy, the insurer has a duty to defend its insured." Further, [a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third-party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.
>
> Also, the following fundamental principles of insurance law apply:
>
> It is well settled in Michigan that an insurer's duty to defend is broader than its duty to indemnify. In order to determine whether an insurer has a duty to defend its insured, this Court must look to the language of the insurance policy and construe its terms to find the scope of the coverage of the policy. Generally, an insurance policy is a contract between the insurer and the insured. If a trial court is presented with a dispute between these parties over the meaning of the policy, the trial court must determine what the agreement is and enforce it. When determining what the parties' agreement is, the trial court should read the contract as a whole and give meaning to all the terms contained within the policy. The trial court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided. A policy is ambiguous when, after reading the entire document, its language can be

reasonably understood in different ways. If the trial court determines that the policy is ambiguous, the policy will be construed against the insurer and in favor of coverage. However, if the contract is unambiguous, the trial court must enforce it as written.

*Radenbaugh v. Farm Bureau Gen. Ins. Co. of Michigan*, 240 Mich. App. 134, 137-39 (2000) (internal citations omitted).

1. Exclusion h

Plaintiffs contend that Exclusion h does not apply since the contract upon which Lane bases his case was signed by Daniel J. Weaver, the chief financial officer of the Sault Tribe, and not Greektown Casino. Therefore, per Plaintiffs, Exclusion h – that denies coverage for an insured's breach of an "express contract or agreement" – does not apply since Greektown was not a "party" to the agreement.

The Sixth Circuit has determined that "the term 'arising out of' is ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to or having a connection with.'" *Assurance Co. of America v. J.P. Structures, Inc.*, 132 F.3d 32, 1997 WL 764498, *5 (6th Cir. Dec. 3, 1997) (unpublished table opinion); *Kmart Corp. v. Fireman's Fund Ins.*, 88 F. Supp. 2d 767, 773 (E.D. Mich. 2000).

Here, Exclusion h states that it excepts from coverage claims "alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement[.]" Lane's complaint plainly alleges that Greektown breached an express contract for his services as an agent of record. Whether or not Greektown was actually a party or signatory to this alleged contract may be relevant to the *merits* of the underlying action – but not to the clear and unambiguous policy exclusion.

Therefore, the Court finds that Exclusion h precludes coverage on the breach of contract

9

claim.

   2. Exclusion q(2)

Plaintiffs contend that Exclusion q(2) does not apply to Kewadin for the following reasons: (1) that q(2) refers to "anti-competitive" business behavior, invoking the interpretive principle of *noscitur a sociis*; (2) that Greektown is not "another's business or contractual relationship," since it is a subsidiary of Kewadin; and (3) that it is "absurd" that the policy would defend individual employees for the conduct, but not the corporation. Plaintiffs' arguments lack merit.

Exclusion q(2) excludes four types of claims against the "company": (1) anti-trust; (2) business competition; (3) unfair trade practices; and (4) tortious interference in another's business or contractual relationship. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90 (2005).

Plaintiffs first argue that Exclusion q(2) is ambiguous and is clearly read to refer only to "anti-competitive" business behavior, like anti-trust violations. American Home responds that the contract provision is to be interpreted as written – to exclude coverage for common law business torts. The interpretive principle of *noscitur a sociis* is that "a word is known by the company it keeps." *Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831, 839 (2008) (quoting *S.D. Warren Co. v. Maine Bd. of Env't Prot.*, 547 U.S. 370, 378 (2006)); *Bloomfield Estates Improvement Ass'n, Inc. v. City of Birmingham*, 479 Mich. 206, 215 (2007) ("[U]nder the doctrine of *noscitur a sociis,* a word or phrase is given meaning by its context or setting").

The Court does not find that q(2) excludes tortious interference only to the extent that it may relate to "anti-competitive" behavior. In examining the language of insurance policy exclusions, a "court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided." *Radenbaugh*, 240 Mich. App. at 139. A plain reading of q(2) excludes tortious interference claims, and Plaintiffs' contention otherwise amounts to an attempt to introduce ambiguity in the provision, where there is none.

Plaintiffs' second argument is that Kewadin could not tortiously interfere in "another's" business or contractual relationship, since the "another" in this case is its own subsidiary. Although courts have recognized that a parent company does not engage in tortious interference when it directs a wholly-owned subsidiary to breach a contract that is no longer in its economic interest, *see, e.g., Speroni S.p.A., v. Perceptron, Inc.*, 12 F. App'x. 355, 360 (6th Cir. June 13, 2001) (unpublished), American Home is correct that Plaintiffs' argument here goes to the merits of the underlying state suit – and not what the policy exclusion provision plainly says.

Finally, Plaintiffs argue that it would be "absurd" to conclude that the policy covers individual employees for tortious interference, but not the corporation. First of all, it is not apparent that the policy protects individual agents/employees for that tort. Secondly, under Michigan law, "corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation*." Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 801 (6th Cir. 2007) (quoting *Reed v. Michigan Metro Girl Scout Council*, 201 Mich. App. 10 (1993) (per curiam)). The policy clearly states the exclusion, and the plain meaning of the language controls the interpretation.

Therefore, the Court finds that Exclusion q(2) does not provide coverage for the tortious

interference with a contract claim.

**C.   Zurich American Policy**

The Zurich American policy provisions at issue include the following:

COVERAGE B PERSONAL AND ADVERTISING INJURY

1.   Insuring Agreement

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

. . . .

   b.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

2.   Exclusions
. . . .
   f.   Breach of Contract

   "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

. . . .
SECTION V DEFINITIONS
 . . . .
14.   "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   a.   False arrest, detention or imprisonment;

   b.   Malicious prosecution;

   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

      d.       Oral or written publication, in any manner, of material that slanders or libels a person's or organization's goods, products or services;

      e.       Oral or written publication, in any manner, of material that violates a person's right of privacy;

      f.       The use of another's advertising idea in your "advertisement"; or

      g.       Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Def. Zurich Br. Ex. 2, Policy).

Zurich contends that its policy does not cover Plaintiffs for the following reasons: (1) the complaint does not allege a "personal and advertising injury"; and (2) the policy specifically excludes breach of contract claims.

Plaintiffs respond: (1) that the tortious interference claim against Kewadin implies that defamatory statements were used against Lane; and (2) that the contract was between the Sault Tribe and Lane, so Zurich's policy exclusion does not apply.

In support of its contention that its policy covering "personal and advertising injury" does not cover the tortious interference and breach of contract state counts, Zurich relies upon two unpublished Michigan cases – *Veterans of Foreign Wars v. Auto-Owners Ins. Co.*, No. 202664, 1999 WL 33444142 (Mich. Ct. App. May 25, 1999) (per curiam) (unpublished), and *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, No. 05-15, 2005 WL 2206461 (W.D. Mich. Sept. 12, 2005) (unpublished), *aff'd* Nos. 05-2479 & 06-2538, 2007 WL 2733336 (6th Cir. Sept. 19, 2007) (per curiam) (unpublished).

In *Veterans of Foreign Wars*, the appellant argued that the appellee insurance company had an obligation under the "personal and advertising injury" provision of the insurance policy to cover

a plaintiff's tortious interference claim. Appellant contended in part that the tortious interference allegations implied that the appellant "possibly" disparaged the plaintiff. *Id*. at *2. The Michigan Court of Appeals rejected that argument, stating:

> [The plaintiff's] tortious interference claim against [the appellant] does not even arguably involve a personal or advertising injury as defined in the parties' insurance policy. . . . The trial court correctly observed that [the appellant] provided it with no evidence that "would require an inference of disparagement on the part of" [the appellant]. In its argument that coverage applies, [the appellant] relies strongly on the principle that the duty of an insurance company to provide a defense in an underlying tort action depends on the allegations in the complaint and extends to allegations that even arguably come within the policy coverage. While we agree with this principle, we do not find it applicable to the instant case given the total lack of a basis from which to even argue that [the plaintiff's] tortious interference allegations contemplate [the appellant's] disparagement of its goods, products or services. Therefore, we conclude that because no personal or advertising injury even arguably existed, [the appellee] owed [the appellant] no duty to defend against [the plaintiff's] allegations.

*Id*. (footnotes omitted).

The Western District of Michigan case *National Union* similarly involved a situation where the insurance company brought an action against the insured for a declaration that the "personal and advertising injury" did not cover the tortious interference claim asserted against the insured. 2005 WL 2206461, at *1. The underlying case asserted Sherman Act claims, as well as the state law torts of intentional interference with prospective business advantage, and civil conspiracy. *Id*. at *3. The underlying complaint also used the terms "disparaging" and "misreprent[ation]" in regards to the anti-trust claims. *Id*. The court, relying upon *Veterans of Foreign Wars*, concluded:

> While this case is somewhat different from the *Veterans* case because the word "disparagement" is contained in the *Nitro* complaint, the substance of the *Nitro* complaint is the same in the sense that no actual allegation of product disparagement, slander or libel has been made. This Court must read complaints to determine their substance and meaning. Idle legal jargon or legal conclusions posited in a separate context (the anti-trust context) are not a reason for conjuring an unpled legal claim. The many pages and paragraphs of the complaint say much about anti-trust allegations. They say nothing factually about product disparagement because no claim for product

14

disparagement has been alleged. In this context, the Court must conclude that the duty to defend and the narrower duty to indemnify have not been implicated.

*Id*. at *4 (internal citations omitted).

The Sixth Circuit subsequently affirmed this determination. *National Union*, 2007 WL 2733336, at *5-6. The court recognized that a "mere recitation of terms such as 'disparagement' or 'misrepresentation' is not sufficient to bring a claim within the reaches of the comprehensive general liability policies." *Id*. at *6. Furthermore, the court found that the insured did not claim damages "because of" the alleged misrepresentations or disparagement. *Id*.

Zurich contends that, based on the rationale behind these two cases, Lane's allegations that Plaintiffs' agents or employees "intentionally and improperly interfered," and made "comments, statements, and representations" do not necessarily implicate a slander, libel, or defamation claim. Zurich claims that not only is there no defamation claim, there is no allegation that the "comments, statements, and representations" involved any disparagement of Lane's goods, products, or services. Similarly, the allegations that Lane "suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the business community, and loss of business opportunities," do not infer any sort of defamation claim.

The Court agrees with Zurich. Lane's allegations in the state case against Kewadin do not "arguably" qualify as a "personal or advertising injury" under the policy. Lane's complaint does not seek recovery for defamation. Plaintiffs' argument is that there is a necessary inference from the wording of the tortious interference allegations in the complaint that Kewadin's employees must have used disparaging or defamatory remarks. The Court agrees with the reasoning of the Michigan Court of Appeals in *Veterans of Foreign Wars* – and an insured's assertion that an individual may have "possibly" used defamatory language in connection with a tortious interference claim is not

15

sufficient, in itself, to show that the tortious interference claim is "arguably" within the "personal or advertising injury" policy coverage.

Furthermore, Plaintiffs make no argument as to whether the breach of contract action asserted against Greektown falls into a "personal or advertising injury."[1]

Therefore, the Court finds that the Zurich policy does not provide coverage for the tortious interference with a contract claim.

### D. Bad Faith Claim

Defendants argue that Count III of Plaintiffs' Complaint for "Bad Faith" should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. Defendants contend that Michigan law does not recognize an independent claim of bad faith breach of an insurance contract.

The Sixth Circuit has recently summarized the post-*Twombly* legal standard for evaluating a motion to dismiss:

> The reviewing court must construe the complaint in a light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Yet, to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.

*Eidson v. State of Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (internal citations omitted).

---

[1] Zurich maintains alternatively that even if the threshold "personal and advertising" coverage is met, its Exclusion f does not cover a "personal and advertising" injury "arising out of a breach of contract[.]"

Under Michigan law, "[a] plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law. An alleged bad-faith breach of an insurance contract does not state an independent tort claim." *Casey v. Auto-Owners Ins. Co.*, 273 Mich. App. 388, 401-02 (2006) (footnotes omitted).

Here, Plaintiffs have simply alleged that Defendants have failed to act in good faith in performing their contractual duties, denied coverage in bad faith, and asserted false policy defenses. (Compl. ¶¶ 36-40). The Court finds that none of these assertions properly allege a legal duty owed to Plaintiffs – apart from the breach of contract claim itself – to avoid a Rule 12(b)(6) dismissal.

Therefore, the Court GRANTS summary judgment to Defendants on Plaintiffs' bad faith claim.

E. **American Home's Motion for Sanctions**

American Home filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 – contending that sanctions are warranted under Rule 11, since Plaintiffs' suit "is not warranted by existing law or a non-frivolous argument for the extension/modification/reversal of existing law." (Def. AHA Br. 3).

> Pursuant to Federal Rule of Civil Procedure 11(c), a district court may impose sanctions upon litigants or their attorneys for making improper motions or representations to the court. Specifically, under Rule 11(b), motions and pleadings must
>
> (1) . . . . not be[ ] presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) [assert only] . . . . claims, defenses, and other legal contentions . . . . warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law;

17

> (3) [contain only] . . . . allegations and other factual contentions hav[ing] evidentiary support . . . .; and
>
> (4) . . . . den[y] . . . . factual contentions . . . . [only as] warranted on the evidence. . . .
>
> Fed. R. Civ. P. 11(b). The district court can impose both monetary and non-monetary sanctions as necessary to deter future violative conduct; however, under Rule 11(c)(2)(A), "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)."
>
> . . . .
>
> Rule 11(b) imposes a duty on Plaintiff and Plaintiff's counsel alike to undertake a "reasonable inquiry" into the law and facts before filing a motion with the court. In reviewing counsel's conduct, [a c]ourt employs "an objective standard of reasonableness under the circumstances."

*Gilreath v. Clemens & Co.*, 212 F. App'x. 451, 464-65 (6th Cir. Jan. 5, 2007) (unpublished) (internal citations omitted).

Upon review of the record, the Court does not find that Plaintiffs should be sanctioned for bringing the instant case. There is no indication that Plaintiffs brought their case for any improper purpose. Furthermore, Plaintiffs' legal contentions were not necessarily frivolous, and there was certainly legal support for their primary contention that insurance contract exclusion provisions should be read broadly to favor the insured. In short, the Court does not find that American Home is entitled to sanctions in the instant case.

Therefore, the Court DENIES American Home's motion for sanctions.

### III. CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **GRANTS** American Home's motion for summary judgment (Doc. No. 8);

(2) **GRANTS** Zurich's motion for summary judgment (Doc. No. 12);

(3) **DENIES** American Home's motion for sanctions (Doc. No. 14).

(3)     **DENIES** Plaintiffs' motions for partial summary judgment (Doc. Nos. 17 & 18)

**SO ORDERED.**

             s/Paul D. Borman
             PAUL D. BORMAN
             UNITED STATES DISTRICT JUDGE

Dated: February 29, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 29, 2008.

             s/Denise Goodine
             Case Manager